DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE, Plaintiff,

v.

FEDERAL ELECTION COMMISSION, Defendant.

Civ. A. No. 86–2075.

United States District Court, District of Columbia.

Oct. 3, 1986.

Robert F. Bauer, Barry J. Reingold, Washington, D.C., for plaintiff.

Charles N. Steele, Ivan Rivera, Michael A. Dymersky, Fed. Election Com'n, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

SPORKIN, District Judge.

Plaintiff initiated this action to seek review of the Federal Election Commission's ("FEC" or "the Commission") dismissal of a complaint filed pursuant to 2 U.S.C. Section 437g(a). The case is before the Court on cross motions for summary judgment. Because the FEC's dismissal of plaintiff's complaint was "contrary to law," the plaintiff's motion for summary judgment is granted and the Commission is directed to conform with this order within thirty (30) days. 2 U.S.C. Section 437g(a)(8)(C).

## I. BACKGROUND

This case arises out of a series of mailings sent to constituents of Representative Fernand St. Germain of Rhode Island's first congressional district by a group entitled Rhode Island Citizens for Accountability in Government. The mailings referred to allegations in newspapers that "Congressman St. Germain has amassed a multimillion dollar personal fortune by using his public position to help wealthy investors," FEC Matter Under Review ("MUR") 2116, Complaint, Exhibit B, and the mailings encouraged recipients to petition the United States House of Representatives Ethics Committee to officially investigate these charges. *Id.*

Plaintiffs assert without challenge that the Rhode Island Citizens group had only two members. Memorandum of Points and Authorities In Support of Plaintiff's Motion for Summary Judgment at 4–5. Plaintiffs also assert, again without challenge, that the mailing at issue here had actually been prepared and paid for, not by the Rhode Island Citizens group, but by the National Republican Campaign Committee ("NRCC"). *Id.*

In fact, it is not disputed that the NRCC contributed $10,000 toward these mailings. The NRCC did not allocate the costs incurred in the mailing against the Federal Election Act's Section 441a(d) expenditure limitations.[1] Believing that the costs of this mailing should have been counted against NRCC's expenditure limitations, the Democratic Congressional Campaign Committee ("DCCC") filed a complaint with the FEC pursuant to 2 U.S.C. Section 437g(a)(1) on December 20, 1985.[2] In its response, NRCC argued that the expenditures were not subject to the Section 441a(d) limitations. Specifically, NRCC contended that the mailing contained no "electioneering message" as defined by the FEC because it neither "depicted a clearly identified candidate" nor "conveyed an

---

1. 2 U.S.C. Section 441a(d) limits the amount of money that a "national committee" of a political party may expend "in connection with the general election campaign of a candidate" to federal office. 2 U.S.C. Section 441a(d). The Act originally established a limit of $10,000 but provided for annual adjustments to reflect changes in the consumer price index. *See* 2 U.S.C. Section 441a(c). Applying the index, the Commission has published a Section 441a(d) limit of $21,810 applicable to national committee spending in House races during 1986. *See* FEC Record, April 1986.

2. DCCC also advised the FEC that the NRCC had spent $15,000 to prepare and broadcast within Congressman St. Germain's district television advertisements assailing the Congressman. However the DCCC's complaint before the FEC referred only to the mailings, FEC MUR 2116, Complaint, and hence only the mailing issue is before this Court.

electioneering message." FEC MUR 2116, Response of NRCC at 7, *citing* 1 Fed. Election Campaign Fin. Guide (CCH) paragraph 5819 (May 30, 1985) ("Advisory Opinion 1985–14").

The FEC's General Counsel's Office disagreed. After reviewing the precedent of Advisory Opinion 1985–14, the General Counsel concluded that the communications at issue here did in fact convey an electioneering message. FEC MUR 2116, Report of General Counsel at 5–7. Thus the General Counsel deemed that the Rhode Island Citizens's mailing was subject to Section 441a(d) limitations and on this basis the Counsel, on May 19, 1986, recommended that the Commission "find reason to believe" that NRCC had violated Section 441a(d). *Id.* at 7.

Despite the 1985–14 precedent and the General Counsel's recommendation, when the Commission voted on DCCC's complaint on June 5, 1986, only three commissioners voted to "find reason to believe" that NRCC had violated Section 441a(d); two commissioners voted against such a finding and one commissioner abstained from voting. Lacking four affirmative votes, the FEC then:

Decided by a vote of 6–0 to:
a. Find no reason to believe that the National Republican Congressional Committee ... violated 2 U.S.C. (Section) 441d....
c. Close the file.
d. Send the appropriate letters.

FEC MUR 2116, Certification. Neither the FEC nor any of the individual Commissioners issued an opinion explaining the vote. Rather, DCCC was informed by letter that the FEC had dismissed its complaint and that the "Federal Election Campaign Act allows a complainant to seek judicial review of the Commission's dismissal of this action. *See* Section 437g(a)(8)." Letter of Federal Election Commission by Lawrence M. Noble, Deputy General Counsel, to Robert F. Bauer, Esquire, Re: MUR 2116, June 17, 1986 at 1–2. Plaintiffs sought such review by initiating this action on July 29, 1986.

## II. JUSTICIABILITY

■ Notwithstanding its notification to DCCC that the Committee had a right of appeal to this Court, the FEC now argues that the issue is not justiciable. The grava-

men of the FEC's argument concerns the language of Section 437g(a)(8)(A) which reads:

Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under paragraph (1), or by failure of the Commission to act on such complaint during the 120–day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia.

2 U.S.C. Section 437g(a)(8)(A). The FEC argues that because dismissal of the complaint in question was by a 3–2–1 vote, it did not have the four affirmative votes necessary to amount to Commission action and thus constitutes neither a "dismissal" nor a "failure to act" within the terms of Section 437g(a)(8)(A), but rather amounts to a "no-action" middle ground. The Commission contends that all cases falling in this middle "no-action" ground are non-reviewable.

The FEC's contention is without merit for several reasons. *First,* the language of the statute clearly indicates dismissals are to be reviewed by this Court. Nowhere does it distinguish between dismissals by three, four, five, or any number of votes; rather, all dismissals of a plaintiff's complaint are reviewable.

*Second,* by specifically mandating that all Commission actions *or* inactions which end a plaintiff's complaint be reviewable, Congress covered the universe of cases and left no middle ground of non-justiciability. Thus Congress meant to ensure that a complaining party's rights are not frustrated.

*Third,* there is a presumption that when Congress enacts a law it intends the statute to accomplish the objectives prompting its enactment, particularly when Congress's language is unambiguous. *See F.T.C. v. Manager Retail Credit Co., Miami Br. Off.,* 515 F.2d 988, 994 (D.C.Cir. 1975). Congress did not intend to create an unexplained gap in its comprehensive statutory scheme. In this instance, Congress meant what it wrote: namely, that all aggrieved persons were entitled to seek review of an adverse Commission action.

Despite the comprehensive and unambiguous language of the statute, defendant points to a statement made by Senator Pell, during debate on the 1979 Amendments to the Act, which it argues indicates that Congress desired a deadlock vote of the Com-

mission (or a 3-2-1 vote as here) to be unreviewable. Specifically, Senator Pell said:

> ... an order dismissing a complaint is reviewable in court solely to assure that the Commission's action is not based on an error of law. And to assure that the Commission does not shirk its responsibility to decide that section also provides that a total failure to address a complaint within 120 days is a basis for a court action. But these two limited bases for judicial intervention are not intended to work a transfer of prosecutorial discretion from the Commission to the courts. Thus, for example, if the Commission considers a case and is evenly divided as to whether to proceed, that division which under the act precludes Commission action on the merits is not subject to review any more than a similar prosecutorial decision by a U.S. attorney.

125 Cong.Rec. S19099 (daily ed. Dec. 19, 1979), *reprinted in Legislative History of the Federal Election Campaign Act Amendments of 1979*, at 549. While I believe that Senator Pell's statement is entitled to deference, I simply cannot ignore the simple rule of statutory construction that the unambiguous language of a statute must take precedence over the statement of a single legislator. *See e.g., United Mine Workers v. Federal Mine*, 671 F.2d 615, 621 (D.C.Cir., 1982) *cert. denied*, 459 U.S. 927, 103 S.Ct. 239, 74 L.Ed.2d 189 (1982).

Moreover, the dismissal of an action by the FEC is *not* analogous to the decision of a U.S. Attorney not to prosecute an individual. In this case we are dealing with a statute that specifically accords an aggrieved party the right to seek review of an adverse outcome.

Because the statute is clear in affording a party whose complaint is dismissed by the Commission an opportunity for review by this Court, this case is properly before the Court for consideration on the merits.

## III. MERITS

■ The standard of review of an FEC dismissal under this paragraph requires a determination of whether the dismissal was "contrary to law." 2 U.S.C. Section 437g(a)(8)(C). The FEC's decision is "contrary to law" if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act, or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion. *Orloski v. FEC*, 795 F.2d 156, 161–62 (D.C.Cir., 1986) (*citing FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 31, 37, 102 S.Ct. 38, 41–42, 44–45, 70 L.Ed.2d 23 (1981); *In re Carter-Mondale Reelection Committee*, 642 F.2d 538, 542 (D.C.Cir.1980)).

■ Ordinarily, a decision by the FEC—the administrative agency empowered to enforce the Act—would be entitled to great deference by the reviewing court. *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981). However, judicial deference "assumes an adequately articulated administrative decision interpreting the relevant statutory law within a range of reasonableness." *Obremski v. Office of Personnel Management*, 699 F.2d 1263, 1269 (D.C.Cir. 1983). Where, as here, there is absolutely no articulation of a rationale for the FEC's action and where, as here, this Court has a statutory responsibility to review the Commission's dismissal, the Court must determine on its own whether the dismissal was "contrary to law."

Dismissal under the circumstances of this case is an impermissible interpretation of the statute. As the General Counsel made clear in his recommendation to the Commission, the law governing this exact situation was settled by two previous Commission advisory opinions. First, in 1984, the Commission held that the 441a(d) limitations applied whenever a communication both "(1) depicted a clearly identified candidate and (2) conveyed an electioneering message." 1 Fed. Election Campaign Fin. Guide (CCH) paragraph 5766 (May 31, 1984) ("Advisory Opinion 1984–15").

The second key precedent was an advisory opinion issued by the FEC last year when the DCCC—the plaintiff here—sought the Commission's opinion about whether certain communications identifying Republican congressmen and criticizing their records were reportable expenditures; the DCCC sought this opinion because the communications in question did not appear to depict a clearly identified candidate nor to convey a specific electioneering message. 1 Fed. Election Campaign Fin. Guide (CCH) paragraph 5819 (May 30, 1985) ("Advisory Opinion 1985–14"). The Commission concluded that the DCCC's communications *would* be attributable to its spending limitations whether it encouraged recipients to "Vote Democratic" or not. The FEC's conclusion was based on the assumption that the mailer would identify a Congressman by name and would be sent to his or her constituents. *Id.* These latter two elements were found sufficient to meet the dual requirements of Advisory Opinion 1984–15 outlined above. *Id.* These two opinions constitute the legal background against which the FEC's dismissal must be judged.

The case before the Court today is nearly analogous to the situation in Advisory Opinion 1985–14. As the General Counsel noted in his opinion:

> The Rhode Island Citizens mailer is similar to the DCCC proposed mailer in AO 1985–14 in many respects. The Rhode Island Citizens mailer identifies by name a specific Democratic representative, Fernand St. Germain, just as the DCCC proposed to name a specific Republican Congressman in its AO request. Both mailers criticize the records of the representative. The Rhode Island Citizens mailer criticizes Representative St. Germain for allegedly using his public position to help wealthy investors and thereby amass a multimillion dollar personal fortune. The DCCC mailer criticizes a named representative for his views on the coastal environment and the oil industry. The Rhode Island Citizens organization distributed its mailer to Representative St. Germain's first congression-

al district constituents, just as the Commission assumed the DCCC would disseminate its mailer to part or all of the district represented by the identified Congressman.

FEC MUR 2116, Report of the General Counsel at 6. Thus, both the mailings at issue in Advisory Opinion 1985–14 and in this case: 1) were prepared by a national committee of a political party, 2) identified by name a specific Congressman of the opposing party, 3) criticized the record of the Congressman, and 4) were distributed to the constituents of the Congressman in question.

Moreover, the General Counsel dismissed as inconsequential the fact that the Rhode Island Citizens's mailing did not refer directly to a particular election nor exhort the reader to vote for a particular political candidate or party. Rather, the Counsel found that the mailer's statement about ridding the government of corruption "is a reference to an election in that one way to remove Congressman St. Germain would be to vote him out of office." FEC MUR 2116, General Counsel's Report at 7. As an FEC Commissioner said during the Commission's discussion of this complaint:

> Well, I will be brief. We have been over these arguments so many times that I don't think we need to go on in great detail. I, I, I think that the one question I always ask at these kinds of discussions because I think it is fairly relevant is what else would be the purpose of the document? And to me it is rather clear. The purpose of the document is to have an adverse impact on the representative as a course to defeat him. I am always surprised at people who never ask the question from that vantage point and always seem to think that there is some other purpose unstated always, as it turns out, that there would be any other reason for this. And clearly the purpose in these kind of documents, in my mind, is very clear. I don't have a problem with it as long as it is noted accordingly. But I don't think you can take a document like this and indicate that it is not

for the purpose of defeating a candidate simply because they have not come right out and said it. If you ... the message is so clear that it has always been difficult for me to understand what the problem is. The point is we have had these discussions in many matters like this. I think there is reason to believe and would vote so.

Statement of Commissioner McDonald, Partial Transcript of an Executive Session of the Federal Election Commission concerning MUR 2116, June 5, 1986 at 7–8.

I find that the NRCC mailer conveys an "electioneering message" as defined by the FEC's own Advisory Opinions and as interpreted by its General Counsel. Thus the FEC's dismissal of the plaintiff's complaint was "contrary to law." Though this Court believes that the FEC's decisions are entitled to deference, where—as in this case—the Commission has abdicated its statutory responsibility, this Court must act to fill the void. Otherwise, contradictory and unexplained actions by the FEC will send conflicting messages to the parties concerned and will result in the very confusion the FEC is designed to combat.

## IV. ORDER

Having found that the FEC's dismissal of the DCCC's complaint was contrary to law, I hereby

ORDER that the Commission conform with this declaration within thirty (30) days. 2 U.S.C. § 437g(a)(8)(C).