**DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE**

v.

**FEDERAL ELECTION COMMISSION, Appellant.**

No. 86–5661.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 21, 1987.

Decided Oct. 23, 1987.

Jonathan A. Bernstein, Atty., Federal Election Commission, with whom Lawrence M. Noble, Acting General Counsel and Richard B. Bader, Asst. General Counsel, Federal Election Commission, Washington, D.C., were on the brief for appellant. Charles N. Steele, Atty., Federal Election Commission, Washington, D.C., also entered an appearance for appellant.

Robert F. Bauer, with whom Barry J. Reingold and Perkins Coie, Seattle, Wash., were on the brief for appellee.

Before RUTH BADER GINSBURG, STARR and NIES [*], Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case raises a novel question concerning the administration of the Federal Election Campaign Act of 1971, as amended, *codified at* 2 U.S.C. §§ 431–55 (FECA or Act). When the six member Federal Election Commission (FEC or Commission) deadlocks and for that reason dismisses a complaint,[1] is the dismissal amenable to judicial review? We do not answer that question for all cases. We do hold, however, that in the circumstances presented here—specifically, a General Counsel recommendation to pursue the complaint in fidelity to FEC precedent in point—dismissal due to a deadlock is reviewable.

Furthermore, we hold that when, as in this case, the FEC does not act in conformity with its General Counsel's reading of Commission precedent, it is incumbent upon the Commissioners to state their reasons why. Absent an explanation by the Commissioners for the FEC's stance, we cannot intelligently determine whether the Commission is acting "contrary to law." 2 U.S.C. § 437g(a)(8)((A), (C) (on petition of "[a]ny party aggrieved," court may determine whether FEC dismissal of a complaint is "contrary to law").

## I.

This case concerns the FEC's task in superintending FECA spending limits applicable to national committees of political parties "in connection with the general election campaign" of a candidate for federal office. 2 U.S.C. § 441a(d)(3).[2] The controversy centers on a complaint filed with the FEC in December 1985 by the Democratic Congressional Campaign Com-

mittee (DCCC). DCCC complained that the National Republican Campaign Committee (NRCC) had not allocated a $10,000 mailing expenditure against the applicable FECA spending ceiling. The mailing, made in October 1985, was addressed to constituents of Democratic incumbent Representative Fernand St Germain of Rhode Island's first congressional district. The mailed material featured newspaper articles asserting that St Germain had abused his public office to amass a large personal fortune; recipients of the mailers were urged to petition the House Ethics Committee to investigate these accusations, and a petition form was included in the mailing.

In response to DCCC's administrative complaint, NRCC contended that the mailing did not count against the spending ceiling because it carried no "electioneering message"; instead, NRCC maintained, the mailing's sole purpose was to contribute to a public debate about St Germain's conduct in office.

The FEC's General Counsel, in a May 1986 report, recommended that the Commission find "reason to believe" NRCC had violated the spending ceiling. He relied, particularly, on two Commission Advisory Opinions; the more recent of them, Advisory Opinion 1985–14, 1 Fed. Election Campaign Fin. Guide (CCH) ¶ 5819, had been requested by DCCC to determine the legality of an advertising program DCCC proposed to implement for the 1986 general election. The program included mailers to districts represented by Republican members of Congress. The communications would have identified a specific Congressman, criticized his record, and listed contributions made to him by the oil industry. It was the Commission's opinion that the proposed DCCC mailer would contain an "elec-

---

[*] Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

[1] The Commission may take formal action only upon "the affirmative vote of 4 members." 2 U.S.C. § 437c(c).

[2] The expenditure limit in question is the one for candidates "for election to the office of Rep-

resentative." 2 U.S.C. § 441a(d)(3)(B). The limit stated in the statute—$10,000 for House of Representatives general election campaigns—is adjusted each year based on increases in the consumer price index. *Id.* § 441a(c)(1). The adjusted limit for 1986 was $21,810. *FEC Record,* April 1986, at 1.

tioneering message" to which FECA's spending ceiling would apply.

The FEC's General Counsel pointed out in his report the "many respects" in which the NRCC-funded mailer criticizing St Germain resembled the DCCC proposed mailer. There were some differences, General Counsel observed, but he indicated they might not be significant ones.

On June 5, 1986, the FEC voted on DCCC's complaint: three Commissioners found "reason to believe" NRCC had violated 2 U.S.C. § 441a(d), the relevant FECA prescription; two voted against such a finding; one abstained. Because DCCC's complaint thus failed to attract the requisite four affirmative votes, *see supra* note 1, the FEC dismissed it. Neither the Commission nor any of the individual Commissioners gave any reasons in explanation of the vote.

On July 29, 1986, DCCC commenced a civil action in the district court seeking a declaration that the dismissal of its administrative complaint was contrary to law and an order directing the FEC to initiate enforcement proceedings to resolve DCCC's complaint. On October 3, 1986, the district court, ruling on cross-motions for summary judgment, held for DCCC. The court concluded that (1) the FEC's dismissal by deadlock was reviewable, and that (2) the dismissal was "contrary to law." Stating that the Commission had "abdicated its statutory responsibility," the district court "act[ed] to fill the void" by "find[ing] that the NRCC mailer conveys an 'electioneering message' as defined by the FEC's own Advisory Opinions." *Democratic Congressional Campaign Committee v. FEC*, 645 F.Supp. 169, 174 (D.D.C.1986).

We affirm the district court's judgment in principal part. In accord with the district judge, we conclude that the FEC's dismissal of DCCC's complaint is reviewable. However, we modify the district court's judgment insofar as it rules dispositively on the merits of DCCC's complaint. We remand the case to the district court with a direction that it, in turn, remand the case to the FEC with instructions to the Commissioners to explain coherently the path they are taking. We agree with the district court that the FEC sends "conflicting messages," *id.* at 174, and appears to be acting with an uneven hand when it dismisses the DCCC complaint without explanation while leaving undisturbed apparently contradictory precedent. However, we believe the Commission should have a further opportunity to set its precedent in order so that it, and not a court of review, will serve as primary decisionmaker in the area Congress has committed, initially, to the FEC's charge.

## II.

■ The FECA provides with respect to judicial review:

Any party aggrieved by an order of the Commission dismissing a complaint filed by such party ..., or by a failure of the Commission to act on such complaint during the 120–day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia.

2 U.S.C. § 437g(a)(8)(A). The Act further specifies that the court "may declare that the dismissal ... or the failure to act is contrary to law." *Id.* § 437g(a)(8)(C).

Nothing in the text of the FECA's judicial review prescription precludes review of a dismissal due to a deadlock, and the arguments the FEC presents for reading a review bar into the Act do not carry the day. The Commission suggests that a dismissal by deadlock should be unchallengeable in court because such a dismissal resolves no substantive issue. *See* Brief for the FEC at 21–24. A dismissal backed by a 4–2, 5–1, or 6–0 vote, however, may also occur when the Commission has made no substantive decision. The FEC has not contended, so far as we can tell, that all such dismissals are unreviewable. We therefore demur to the FEC's observation that a 3–2–1 vote decides nothing.

The FEC also argues, citing *Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), that deadlocks on the Commission are immunized from judicial review because they are simply exercises of prosecutorial discretion. Brief for the

FEC at 17–20. But here again, a 6–0 decision not to initiate an enforcement action presumably would be reviewable under the words of § 437g(a)(8)(A), although the unanimous vote might represent a firmer exercise of prosecutorial discretion than a 3–2–1 division.

The Commission gives prime place, in presenting its review preclusion position, to an argument from the legislative history of the FECA Amendments of 1979. The 1979 Amendments carried over without substantive change the 1976 Amendments' provision on judicial review of complaint dismissals. In a prepared statement made on the floor of the Senate, Senator Claiborne Pell, Chairman of the Senate Rules Committee which had reported the 1979 bill, commented:

> Section [437g](a)(8) provides that an order dismissing a complaint is reviewable in court solely to assure that the Commission's action is not based on an error of law. And to assure that the Commission does not shirk its responsibility to decide that section also provides that a total failure to address a complaint within 120 days is a basis for a court action. But these two limited bases for judicial intervention are not intended to work a transfer of prosecutorial discretion from the Commission to the courts. Thus, for example, *if the Commission considers a case and is evenly divided as to whether to proceed, that division which under the act precludes Commission action on the merits is not subject to review any more than a similar prosecutorial decision by a U.S. attorney.*

125 CONG. REC. 36,754 (1979) (emphasis added), *reprinted in* FEC, *Legislative History of the FECA Amendments of 1979,* at 549.

As just pointed out, however, a 6–0 vote to dismiss may indicate the strongest resolve not to prosecute as a matter of discretion. Because § 437g(a)(8)(A) provides broadly for court review of an FEC order dismissing a complaint, *see supra* p. 1133, we resist confining the judicial check to cases in which, as per Senator Pell's state-

ment, the Commission "act[s] on the merits." It may be, moreover, that the Senator's statement blends two analytically discrete issues: (1) the threshold question whether a complaint dismissal is reviewable at all; (2) the respect that the reviewing court must accord to the Commission's disposition. *See infra* note 5. As to the latter issue, the Supreme Court has clarified that judges in court owe large deference to a Commission disposition so long as the FEC (or its General Counsel) supplied reasonable grounds for reaching (or recommending) the disposition. *See FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 38 n. 19, 102 S.Ct. 38, 45 n. 19, 70 L.Ed.2d 23 (1981) (General Counsel's report suffices to show substantive basis for Commission determination).[3]

We are mindful that Congress votes only on the statutory words, and not on statements made in committee reports or on the House or Senate floor. *See, e.g., Blitz v. Donovan,* 740 F.2d 1241, 1247 (D.C.Cir. 1984); *AFGE v. FLRA,* 712 F.2d 640, 647 & n. 29 (D.C.Cir.1983); *see also Hirschey v. FERC,* 777 F.2d 1, 7–8 & n. 1 (D.C.Cir.1985) (Scalia, J., concurring) (committee reports). We further note that Senator Pell spoke three years *after* Congress made provision for judicial review of complaint dismissals by the FEC. *See AFGE v. FLRA, supra* (in construing statutory language, heavy weight should not be given to post-enactment statements by members of Congress); *see also Petry v. Block,* 697 F.2d 1169, 1171 (D.C.Cir.1983) (per curiam); *United Mine Workers v. Federal Mine Safety and Health Review Comm'n,* 671 F.2d 615, 620–23 (D.C.Cir.), *cert. denied,* 459 U.S. 927, 103 S.Ct. 239, 74 L.Ed.2d 189 (1982). And we are satisfied that court review of DCCC's petition fits within the Act's language, *see supra* p. 1133, and will yield no irrational results. *See Eagle–Picher Indus. v. EPA,* 759 F.2d 922, 929 n. 11 (D.C. Cir.1985). For all these reasons, we cannot regard Senator Pell's floor statement as controlling our decision on DCCC's plea for judicial review.

---

**3.** Apparently prompted by the court's ruling in *Common Cause v. FEC,* No. 85–968 (D.D.C. June 25, 1986), the FEC now issues a statement of reasons when it overturns by four or more votes the recommendations of its General Counsel regarding an enforcement action. *FEC Record,* May 1987, at 1.

## III.

■ As earlier recounted, *see supra* pp. 1132–33, in a reasoned report, the FEC's General Counsel recommended that the Commission find reason to believe NRCC should have allocated against FECA spending limits the $10,000 cost of a certain mailing to Rhode Island voters. In failing to follow its General Counsel's recommendation and, instead, dismissing the complaint against NRCC, the FEC may have slighted its own precedent and accorded similar cases dissimilar treatment, thereby proceeding on a course "contrary to law." [4] Because we have no explanation why three Commissioners rejected or failed to follow the General Counsel's recommendation, we are unable to say whether reason or caprice determined the dismissal of DCCC's complaint.[5]

■ Parting ways with the district court at this juncture, *see supra* p. 1133, we do not think it yet in order for a court to dictate the ultimate outcome. The Commission or the individual Commissioners should first be afforded an opportunity to say why DCCC's complaint was dismissed in spite of the FEC's General Counsel's contrary recommendation.[6]

### CONCLUSION

For the reasons stated, the district court's judgment is affirmed in principal

part, but modified insofar as it finally determines the merits of DCCC's complaint, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

4. The FEC correctly notes (Brief for the FEC at 21 n. 10; Reply Brief at 4 n. 4) that "contrary to law" in this context includes action that is "arbitrary and capricious." *See Orloski v. FEC,* 795 F.2d 156, 161 (D.C.Cir.1986); *Antosh v. FEC,* 599 F.Supp. 850, 853 (D.D.C.1984). *Trahan v. Regan,* 824 F.2d 96, 101–02 (D.C.Cir.1987), is not to the contrary. The analysis in that opinion is explicitly confined to the context of fee awards under the Equal Access to Justice Act.

5. *Cf. Common Cause v. FEC,* 655 F.Supp. 619, 622–23 (D.D.C.1986) (Commission deadlocked 3–3; district judge remanded the case for an "adequate explanation" of the complaint dismissal).

In the absence of prior Commission precedent (and, arguendo, assuming reviewability), judicial deference to the agency's initial decision or indecision would be at its zenith. *Cf.* Brief for the DCCC at 28–29 (where deadlock reflects genuine uncertainty about the law, court should be loath to intervene, but where Commission is unable or unwilling to apply "settled law to

clear facts," judicial intervention serves as a necessary check against arbitrariness). *See also* Reply Brief at 6 n. 6 (referring to district court and DCCC recognition that "section 437g(a)(8) does not necessarily provide judicial relief from [FEC] deadlocks in the absence of prior precedent").

6. In briefing this appeal, the FEC suggested some distinctions between this case and the ones on which FEC's relevant Advisory Opinions were based. *See* Brief for the FEC at 29–30; Reply Brief at 16. *Post hoc* rationalizations by appellate counsel, however, come too late and from the wrong source. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962). Intelligent review requires justifications by the Commission or Commissioners for the FEC's dispositions. *See, e.g., SEC v. Chenery Corp.,* 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947); *Village of Winnetka v. FERC,* 678 F.2d 354, 357–58 (D.C.Cir.1982) (per curiam).