**COMMON CAUSE, Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

**Civ. A. No. 83–2199.**

United States District Court, District of Columbia.

Dec. 30, 1986.

Congressional Club), (4) Fund For A Conservative Majority (FCM) and (5) National Conservative Political Action Committee (NCPAC). None of these committees was authorized under 2 U.S.C. § 432(e)(1), (3) to make expenditures on behalf of candidate Reagan.

After merging plaintiff's complaint with one filed earlier by the Carter-Mondale Reelection Committee, Inc. and the Democratic National Committee (hereinafter cited Carter-Mondale complaint) and after investigating the majority of the claims,[1] the defendant voted to close the file with no further action.

After a comprehensive review of the motions, the oppositions thereto, the voluminous record and counsels' oral argument, the Court concludes that defendant's actions were contrary to law on the issue raised concerning section 432(e)(4) and not contrary to law on the issue of impermissible coordination, section 441a(a). On the matter of defendant's refusal to investigate NCCC and AEP for violations of section 441a(a), the Court concludes that without an adequate explanation for such action, on the facts of this case, it is necessary to return the matter to the Commissioners.

Roger M. Witten, Carol F. Lee, Wilmer, Cutler & Pickering, Washington, D.C., for plaintiff.

Charles N. Steele, F.E.C., Washington, D.C., for defendant.

## OPINION

JOHN GARRETT PENN, District Judge.

Plaintiff contends that defendant wrongfully dismissed a complaint alleging that five political committees supporting Ronald Reagan's 1980 campaign violated various provisions of the Federal Election Campaign Act. 2 U.S.C. § 431–455 (1982, Supp. III 1985). The parties have filed cross-motions for summary judgment which involve three issues arising under the FECA. The five committees named in the complaint are, (1) Americans For An Effective Presidency (AEP), (2) Americans For Change (AFC), (3) North Carolina Congressional Club (NCCC) (known today as National

I

### AFC, FCM, NCPAC VIOLATED 2 U.S.C. § 432(e)(4)

The first legal issue to address is plaintiff's allegation that AFC, FCM and NCPAC violated section 432(e)(4) which deals with the use of a candidate's name in an authorized committee name. The statute states:

The name of each authorized committee shall include the name of the candidate who authorized such committee under paragraph (1). In the case of any political committee which is not an authorized committee such political committee shall not include the name of any candidate in its name.

2 U.S.C. § 432(e)(4) (1982, Supp. III 1985).

It is uncontested that the committees in question were not Reagan's authorized

---

**1.** The allegations against AEP and NCCC for impermissible coordination were never investigated because defendant voted 3–3 on similar allegations in the Carter-Mondale complaint. A vote of 4 or more is necessary for an investigation to go forward.

committees. Although the registered names did not contain Reagan's name, the evidence undeniably reveals that each committee held itself out to the public at times with a name that contained the word "Reagan". Defendant argues that these names were project names and thereby were not restricted by the mandate of section 432(e)(4). However, the facts show that potential contributors were urged to send their checks to "Reagan for President in '80" (AFC), "Ronald Reagan Victory Fund" (NCPAC) and "Americans for Reagan" (AFC). Reply envelopes were provided addressed to "Reagan for President '80" (AFC) and "Citizens for Reagan in '80" (FCM). AFC asked individuals to become members of state steering committees of "Reagan for President in '80" and "Ronald Reagan for President in '80".[2] Their headquarters answered the telephone, "Americans for Reagan". Plaintiff's Motion for Summary Judgment at 7. The general counsel's opinion, which was presumably followed by defendant[3], reasoned that because the projects did not constitute separate political committees, as evidenced by the combined funds and personnel, section 432(e)(4) did not apply. Joint Ex. 9 at 53–54, Joint Ex. 10 at 56–58, Joint Ex. 11 at 66–68. The facts supporting the projects' non-independent nature support plaintiff's argument, however, and defendant's assertions cannot stand without a rational basis. It is precisely because the projects were so closely aligned with the committees that plaintiff believed the public would be easily confused and thereby assume that the use of Reagan's name meant that the committee was authorized.[4]

The Court is aware that it has limited review in such matters. If there exists a rational basis for the agency's decision, regardless of whether the Court might otherwise disagree, the decision will stand. *In re Federal Election Campaign Act Litigation*, 474 F.Supp. 1044, 1046 (D.D.C.1979), *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C.Cir.1981), *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 102 S.Ct. 38, 45–46, 70 L.Ed.2d 23 (1981). With this in mind, the Court, nonetheless, concludes that defendant's interpretation defeats the plain meaning of the statute and the congressional intent.

■ Using the words of the statute, the defendant unreasonably focuses on the definition of "political committee" to the exclusion of the word "name" and its plain meaning. It is clear from a previous advisory opinion that the defendant considered the name of a committee as that which is presented to the public; not simply that which is registered officially in the records out of the public view. Federal Election Campaign Finance Guide (CCH), Advisory Opinion 1980–84. The statute cannot be interpreted literally so that common sense is read out of its meaning. The political machinery is powered by names and what those names symbolize and identify. Therefore, whatever names the committees presented to the public for identification must also constitute a "name" within the meaning of section 432(e)(4).[5] To allow defendant's reasoning would be to allow political committees to emasculate the effectiveness of the rule. Both the plain under-

---

**2.** Reagan's authorized committees contained his name. One closely resembling the "names" presented to the public by AFC was "Reagan for President".

**3.** When the Commission's decision follows the recommendation of the General Counsel, the Court may review the decision on the basis of the rationale set out in the report. *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 102 S.Ct. 38, 45, n. 19, 70 L.Ed.2d 23 (1981).

**4.** The Congressional intent for this section was to avoid confusion. A House Report explained, "the purpose is to require the (authorized) committee name to identify, clearly and by unam-

biguous reference, the authorizing candidate." H.H.Rep. No. 422, 96th Cong., 1st Sess. 13 (1979), U.S.Code Cong. & Admin.News 1979, pp. 2860, 2873. In *addition*, the regulations require disclaimers so that the public would know whether the committee was authorized by a candidate. 2 U.S.C. § 441d (1982).

**5.** The Court analogizes this rationale to that applied to situations where companys may register under one name but be known to the public or "trade" under a different name. Clearly, the publicly used name is as important as the company's "official" name.

standing of the word "name" in the context of elections and the legislative intent to safeguard against confusion, leads the Court to conclude that defendant's decision, on the facts of this case, is contrary to law.

## II

### FAILURE TO INVESTIGATE ALLEGED SECTION 441a(a) VIOLATIONS (AEP AND NCC)

A brief summary of the procedural background is necessary for a full understanding of the second issue before this Court.

On July 2, 1980, about three months before plaintiff filed the administrative complaint, a similar complaint was filed by another party (Carter-Mondale complaint) alleging, *inter alia*, that AFC, FCM, NCPAC and NCCC had violated 2 U.S.C. § 432(e)(4) and that AFC, FCM, NCPAC, NCCC and AEP had violated section 441a(a). On August 15, 1980, the General Counsel submitted a report recommending that the defendants find reason to believe that AFC, FCM, NCPAC and NCCC had violated section 432(e)(4) and that AFC, FCM, NCPAC, NCCC and AEP had violated section 441a(a). Joint Ex. 3 at 375–390. The defendant found reason to believe all four committees had violated section 432(e)(4) and found reason to believe AFC, FCM and NCPAC had violated section 441a(a). However, contrary to the General Counsel's recommendation, by a 3–3 vote, the defendant reached no conclusion as to whether there was reason to believe AEP and NCCC had engaged in impermissible coordination. Joint Ex. 4 at 614–16. No explanation was submitted for the decision.

Subsequently, plaintiff filed a complaint raising similar allegations against the same parties cited in the Carter-Mondale complaint. After examining plaintiff's complaint, the General Counsel recommended that in the interest of administrative efficiency defendant should merge plaintiff's complaint with that of the Carter-Mondale complaint. On October 15, 1980, the complaints were merged. Defendant's Ex. 4 at 126.

An investigation was commenced which resulted, *inter alia* in the General Counsel's conclusion that further action would be fruitless because the investigation failed to find evidence revealing direct coordination. Joint Ex. 9 at 753–56, Joint Ex. 10 at 911–14, Joint Ex. 11 at 1165–69. Defendant voted on May 24, 1983 to close the file and dismiss the complaint. Joint Ex. 14 at 1371–72. Plaintiff argues that failure to investigate the allegations against AEP and NCCC was arbitrary and capricious and thereby contrary to law.

■ Pursuant to 2 U.S.C. § 437g(a)(2), an investigation may commence only upon the affirmative vote of four or more commissioners. Therefore, defendant correctly avers that the 3–3 vote effectively barred any further investigation of AEP or NCCC. It is not axiomatic, however, that the failure to sustain a vote statutorily sufficient for investigation, *per se* renders the action "lawful" or essentially beyond judicial review. Although the defendant is given broad discretionary powers to determine whether to investigate a complainant's claim, section 437g(a)(8)(A) plainly guarantees a party aggrieved by an order dismissing a complaint the right to seek judicial review. Whether there was a majority vote finding "no reason to believe" or a tie vote, the result is the same; the investigation is foreclosed and the complaint dismissed. *Democratic Congressional Campaign Committee v. Federal Election Commission*, 645 F.Supp. 169 (D.D.C. 1986).

The defendant's action in such matters is presumed to be lawful. Yet it is within the range of possibilities that the votes cast against investigation were founded on an impermissible basis. Therefore, courts have determined that judicial review is warranted regardless of the discretion afforded to prosecute or investigate. *See Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 1857–59, 44 L.Ed.2d 377 (1975). The problem here is that defendant, with no explanation, acted completely counter to the General Counsel's recommendation to investigate all of the committees. To enable this Court to intelligently review the

defendant's determination on this issue, some statement of reasons is warranted. The Court notes that a judgment as to the adequacy of an agency's explanation is unrelated to whether the underlying action is justified under the organic statute. *Federal Election Commission v. Rose*, 806 F.2d 1081, 1088 (D.C.Cir.1986).

 Therefore, without an adequate explanation for dismissing the complaint against AEP and NCCC, when the General Counsel concluded otherwise, the action must be found arbitrary and capricious and returned to defendant to supplement the record accordingly. *Airmark Corp. v. FAA*, 758 F.2d 685, 692 (D.C.Cir.1985).

### III

### DECISION TO TAKE NO FURTHER ACTION TO INVESTIGATE OR PROSECUTE AFC, FCM AND NCPAC

Plaintiff contends that the defendant acted contrary to law by dismissing the complaint against AFC, FCM and NCPAC alleging violations of section 441a(a). Specifically, plaintiff believes that defendant's investigation was not thorough enough and that the statute was too narrowly interpreted. The gravaman of plaintiff's allegation is that because AFC, FCM and NCPAC "impermissibly coordinated" their efforts with those of the official Reagan campaign, they were limited by the ceiling on "contributions" as set out in 2 U.S.C. § 441a. The Court is not persuaded by plaintiff's arguments and concludes that defendant did not act contrary to law.

 As this Court has mentioned in Part II, *supra,* defendant clearly has a broad grant of discretionary power in determining whether to investigate a claim or to bring a civil action under the statute. H.R. Rep. No. 917, 94th Cong.2d Sess. 4 (1976). The General Counsel's opinion, which defendant followed,[6] sets forth rational reasons for terminating the investigation. Although, the opinion notes that some issues, particularly the actions of common vendors, raise presumptions of coordination, the flat denials by both the Reagan repre-

sentatives and the committee members when weighed in conjunction with the lack of evidence proving direct coordination supports the final decision. Joint Ex. 9 at 755, Joint Ex. 10 at 914–15, Joint Ex. 11 at 1167–69. The Court must defer to the defendant's discretion to assess the likelihood that further use of resources would not produce new evidence.

The remaining issue is whether defendant applied an appropriate interpretation of section 441a(a) to the evidence uncovered. The applicable section provides:

> No person shall make contributions—
> (A) to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate exceed $1,000;
> (B) to the political committees established and maintained by a national political party, which are not the authorized political committees of any candidate, in any calendar year which, in the aggregate, exceed $20,000; or
> (C) to any other political committee in any calendar year which, in the aggregate, exceed $5,000.

2 U.S.C. § 441a(a)(1)(A), (B), (C).

When expenditures are made in "cooperation, consultation, or concert with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents", they will be considered contributions to a candidate and subject to be limitations of section 441a(a). 2 U.S.C. § 441a(a)(7)(B)(i). The issue therefore, for the purposes of this case, is whether evidence of direct coordination is the necessary prerequisite to a determination of impermissible coordination so that limitations would apply. Defendant interpreted the statute in this narrow fashion.

The Supreme Court in the notable case of *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), upheld the Congressionally set limit on "contributions" but determined that a similar ceiling on the amount of "independent expenditures" was unconstitutional, *Buckley*, 96 S.Ct. at 650.

6. See footnote 3 *supra.*

This decision prompted Congress to amend the statute accordingly.[7]

Independent expenditure was changed to:

> an expenditure by a person expressly advocating the election or defeat of a clearly identified candidate which is made without cooperation or consultation with any candidate, or any authorized committee or agent of such candidate and which is not made in concert with, or at the request or suggestion of, any candidate, or any authorized committee or agent of such candidate.

2 U.S.C. § 431(17) (1982).

One reason that "contributions" can be controlled but expenditures cannot is that "the absence of prearrangement and coordination of an expenditure with the candidate or his agent not only undermines the value of the expenditure to the candidate, but also alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate." *Buckley* at 648.

Plaintiff bases a determination of coordination on the broad view that the "totality of the circumstances" compel a conclusive inference that the committees lacked independence from the official campaign. The circumstances include; interlocking membership of persons at the policy making levels of the committees and prior alliances with the official committees; indirect communication of strategy by Reagan's committees through the media; the use of common vendors. Joint Ex. 5 at 628–637. Defendant's extensive investigation failed to produce evidence of any *direct* requests or scheming.

■ Defining coordination by the totality of the circumstances is not an unreasonable interpretation. However, neither is the interpretation that the coordination must be direct. In the House Report which accompanied the 1976 House bill amending the Federal Election Campaign Act, the definition of "at the suggestion of" in the

definition of independent expenditure was intended to include *direct* suggestions. H.Rep. No. 917, 94th Cong., 2d Sess., 5 (1976) (emphasis added). Further, the report stated, "if a candidate or some other person suggests in a speech to a group of persons that everything should be done to defeat the opponent of the candidate, it is not the intent of the Committee that such a reference in a speech be viewed as a 'suggestion' for purposes of the definition." *Id.* In view of this, it is understandable that the General Counsel would conclude that "absent a showing of an actual agreement to use the media for purposes of coordinating activity, it would be very difficult to sustain a finding of cooperation and coordination based on the press releases." Joint Ex. 9 at 751–753. Plaintiff may be absolutely correct in concluding that the totality of the circumstances suggest coordination but the opportunity for coordination is a separate question from whether it was utilized. It could be argued that the opportunity *always* exists for coordination. However, in view of the nature of party politics, it is difficult to state exactly what combination of circumstances would prove that coordination occurred, absent evidence of express intent or communication. Therefore, in light of the limited review, the Court is constrained from substituting its judgment as to what is the best interpretation, and concludes that the narrow definition applied to defendant was not contrary to law. Plaintiff has failed to overcome the presumption that the agency's action is valid. *Environmental Defense Fund v. Costle*, 657 F.2d 275, 283 (D.C.Cir. 1981).

## IV

For the reasons set forth, the Court concludes that defendant's motion for summary judgment should be granted on the issue of whether dismissing section 441a(a) allegations against AFC, FCM and NCPAC was proper. On whether it was arbitrary

---

**7.** The key operative language previously read as follows: "any expenditure ....relative to a clearly identified candidate". The Court concluded that the use of so indefinite a phrase as "relative to" a candidate, failed to clearly mark the boundary between permissible and impermissible speech. *Buckley,* 96 S.Ct. at 645.

or capricious not to investigate the claims against AEP and NCCC the Court concludes that a statement of reasons is necessary. Finally, plaintiff's motion for summary judgment on the issue of the use of Reagan's name in the name the committee presented to the public, should be granted. Pursuant to 2 U.S.C. § 437g(a)(8)(C) the defendant should conform accordingly within 30 days.

The case will be remanded to the agency for action consistent with this Opinion.

## ORDER

This comes before the Court on cross motions for summary judgment filed by the parties. After giving careful consideration to the motions, the oppositions thereto, arguments of counsel and the record in this case, the Court, for the reasons set forth in the accompanying opinion, concludes that the plaintiff's motion should be granted in part and denied in part, that the defendant's motion should be granted in part and denied in part, and that the matter should be remanded to the Commission for further action consistent with the opinion filed in the case.

It is hereby

ORDERED that the plaintiff's motion for summary judgment is granted with respect to the issue of the use of the name of Ronald Reagan in the name of the committee presented to the public, and it is denied in all other respects, and it is further

ORDERED that pursuant to 2 U.S.C. § 437g(a)(8)(C) the defendant shall conform with the opinion and order accordingly within 30 days, and it is further

ORDERED that the defendant's motion for summary judgment is granted on the issue of whether dismissing allegations pursuant to 2 U.S.C. § 441a(a) against Americans For Change, Fund For A Conservative Majority and National Conservative Political Action Committee was proper and is denied in all other respects, and it is further

ORDERED that on the issue of whether it was arbitrary or capricious not to investigate the claims against Americans For An Effective Presidency and North Carolina Congressional Club, now known as the National Congressional Club, a further statement of reasons is necessary, and accordingly, the matter is remanded to the Federal Election Commission for the submission of such a statement within 30 days of the date of this Order.