**COMMON CAUSE, Plaintiff,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

**Civ. A. No. 85–1130.**

United States District Court, District of Columbia.

May 30, 1989.

Adrian Masters, Washington, D.C., for plaintiff.

Robert W. Bonham III, Federal Election Com., Washington, D.C., for defendant.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

Plaintiff brought this action pursuant to the Federal Election Campaign Act (FECA), 2 U.S.C. § 437g(a)(8), to seek review of the Federal Election Commission's (FEC) dismissal of plaintiff's complaint against the Republican National Independent Expenditure Committee (RNIEC). Plaintiff contends that the RNIEC violated 2 U.S.C. § 441a(d)(3)(A)(i) or § 441a(a) in connection with the 1983 special election in which Dan Evans was elected to the United States Senate. Plaintiff asserts that the RNIEC was affiliated with the National Republican Senatorial Committee (NRSC) or the Republican National Committee (RNC), and that it coordinated its activities with the NRSC, and that therefore, its expenditures on behalf of Evans were not "independent" within the meaning of the FECA. Plaintiff urges the Court to hold, as a matter of law, that the NRSC and RNIEC are affiliated or that they coordinated their expenditures. Alternatively, plaintiff seeks an order requiring the FEC to reconsider plaintiff's administrative complaint under what it contends are the proper statutory standards.

Briefly, the background of this case is as follows: In March 1983, Rodney Smith became treasurer and co-founder of the RNIEC, which registered with the FEC as a non-party political committee making independent expenditures. Two months earlier, he had completed a six-year stint as finance director and treasurer of NRSC, and he had been finance director of the Republican National Committee prior to that time. Smith's co-founder of the RNIEC was United States Senator John Heinz, who subsequently served as chairman of that committee's Advisory Panel. Senator Heinz had served as chairman of the NRSC until 1980, but he retained his membership in the NRSC until he resigned on November 14, 1983. He had suspended his activities on behalf of NRSC and taken a leave of absence on October 6, 1983.

On September 1, 1983, Senator Henry Jackson of Washington died, and a special election for his seat was set for November 8, 1983. On September 12, 1983, Evans was appointed to temporarily fill the vacancy, and he declared his candidacy in the special election. Senator Heinz met with Senator Richard Lugar, chairman of the NRSC, on September 15, 1983, at which time Senator Lugar urged him to withdraw

from the NRSC because of his activities on behalf of the RNIEC. On September 19, 1983, the RNIEC formally decided to make independent expenditures on behalf of Evans, and it subsequently spent $185,000 for his candidacy. To raise this and other money, the RNIEC used a contributor list which Smith took with him when he left the NRSC, and a second list belonging to Senator Heinz. Much of the money was spent to mail "election-grams" to voters. During the campaign, the NRSC spent $260,000, which was the maximum it was permitted to spend under 2 U.S.C. § 441a(d)(3)(A)(i).

Common Cause filed a complaint with the FEC charging that the RNIEC's expenditures should not be treated as independent. The FEC consolidated Common Cause's complaint with another filed by the Democratic Senatorial Campaign Committee and the Democratic Congressional Campaign Committee, alleging that the FECA was violated by the RNIEC, the NRSC, Senator Heinz, Smith, and the Dan Evans for Senate Committee. On July 10, 1984, based upon the recommendations of its General Counsel, the FEC found reason to believe that the RNIEC had violated 2 U.S.C. § 441a(a). The General Counsel's original recommendation to find reason to believe that the committees were affiliated was based on three factors: "Smith's close links between both committees; the fact that Senator Heinz was involved with both committees; and the fact that the RNIEC used the same contributor list used by the NRSC." (General Counsel's Brief, June 21, 1984, at 8.)[1]

The General Counsel subsequently sent questions to the RNIEC and the NRSC. After reviewing the responses and the record, the General Counsel prepared another brief, dated October 30, 1984,[2] in which he recommended that the FEC find no probable cause that the RNIEC violated the Act. In this brief the General Counsel

determined that "it does not appear that [Smith] used [his] links to either acquire information from the NRSC or inform that organization of the RNIEC's plans concerning the Evans senate race." (General Counsel's Brief at 8.) He further concluded that while Senator Heinz's dual membership could lead to a presumption of affiliation in other circumstances, such a presumption was inappropriate where Senator Heinz "was not provided with information concerning NRSC's plans and activities in Washington state." (General Counsel's Brief at 11.) Finally, the General Counsel concluded that a "genuine dispute" between Smith and the NRSC over the ownership of the contributor list in question "militat[ed] against the list as a presumption of the affiliation of the two committees." (General Counsel's Brief at 11.) On February 12, 1985, the FEC unanimously voted to dismiss the complaint against the RNIEC, and plaintiff subsequently filed the present action.

## I

Congress provided that the FEC's dismissal of a complaint should be reversed only if contrary to law. *Federal Election Commission v. Democratic Senatorial Campaign Commission*, 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981). "The FEC's decision is 'contrary to law' if (1) the FEC dismissed the complaint as the result of an impermissible interpretation of the Act, (citation omitted), or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion." *Orloski v. Federal Election Commission*, 795 F.2d 156, 161 (D.C.Cir.1986).

In reviewing an agency's interpretation of a statute committed to its administration, a court must first look to the legislation. *Chevron U.S.A., Inc. v. N.R.D.C.,*

---

**1.** This recommendation is found in the General Counsel's report of June 21, 1984. A previous report from the General Counsel, dated April 13, 1984, recommended a finding of reason to believe that the committees were affiliated based upon the RNIEC's use of "the NRSC's contributor list". The report was submitted to the FEC,

but after discussion of it, it was withdrawn for further consideration.

**2.** This document will be cited as "(General Counsel's Brief at ___.)". Unless otherwise stated, references to "the brief" or "General Counsel's brief" concern this document.

467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); *Common Cause v. Federal Election Commission*, 842 F.2d 436, 439 (D.C.Cir.1988). If the statute and its legislative history reveal a clear intent, that intent must be adhered to. *Id.* If, however, the legislation is silent or ambiguous, the court's task is not to interpret the statute as it thinks best, but to determine if the agency's construction is a reasonable one. *Id.* To be sufficiently rational, the interpretation must be consistent with the purposes of the Act. *Federal Election Commission v. Democratic Senatorial Campaign Commission*, 454 U.S. at 41, 102 S.Ct. at 47; *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26, 102 S.Ct. 821, 828, 70 L.Ed.2d 792 (1982).

In a recent case involving the FEC's dismissal of claims, the Court of Appeals stated that "[d]eference is particularly appropriate in the context of the FECA, which explicitly relies on the bipartisan Commission as its primary enforcer." *Common Cause v. Federal Election Commission*, 842 F.2d at 448, (citing *Federal Election Commission v. Democratic Senatorial Campaign Commission*, 454 U.S. at 37, 102 S.Ct. at 44). However, the case of *Federal Election Commission v. Democratic Senatorial Campaign Commission* indicates that an agency is entitled to less deference when its interpretations are inconsistent. 454 U.S. at 37, 102 S.Ct. at 44.

Plaintiff asserts that the Court should look to the General Counsel's brief of October 30, 1984 for the Commission's rationale. The FEC maintains that the General Counsel's brief provides the "possible rationale" for the Commission's action, but that any defects in the brief are irrelevant since its analysis "may or may not have been accepted by the Commission." (FEC Opposition, filed December 23, 1885, at 4.) The FEC makes this argument despite the fact that it relies entirely upon the brief in its memorandum in support of its motion. (FEC Memorandum, filed November 21, 1985, at 15 *et seq.*)

■ When the FEC's decision follows the recommendation of the General Counsel, the Court may review the decision on the basis of the rationale set out in the brief or report. *Federal Election Commission v. Democratic Senatorial Campaign Commission*, 454 U.S. at 38 n. 19, 102 S.Ct. at 45 n. 19. Thus, unless the FEC can point to a separate statement of the Commission's rationale, the General Counsel's brief should be presumed to contain the Commission's rationale. The FEC has not done so. Therefore, the Court will look at the brief as a statement of the FEC's rationale.

## II

■ Since the NRSC could not make independent expenditures on behalf of the Evans campaign, *see* 11 C.F.R. § 110.7(b)(4), nor could any political committee established, financed, maintained, or controlled by the NRSC do so, as expenditures made by affiliated committees are treated as if made by a single committee, *see* 2 U.S.C. § 441a(a)(5); 11 C.F.R. § 110.3. The issues here relate to whether the RNIEC was affiliated with the NRSC when it made expenditures for Evans.

Plaintiff asserts that the General Counsel failed to address the affiliation issue separately from the coordination issue, and that in any event, the dismissal of its affiliation claim was contrary to law. While the General Counsel did not analyze the questions separately, his brief does state some reasons for dismissing the affiliation claim which are distinct from his coordination analysis.

The General Counsel determined that Senator Lugar controlled the NRSC, and that Senator Lugar objected to Senator Heinz's dual membership, as well as to the RNIEC's use of the contributor list taken by Smith. He also determined that a dispute between the RNIEC and the NRSC over the ownership of that list was "legitimate." Finally, the General Counsel appeared to look at the lack of any contact between the RNIEC and the NRSC regarding the Evans campaign as evidence against a finding of affiliation. In light of those determinations the General Counsel concluded that the RNIEC and the NRSC were not affiliated, despite Senator Heinz's

dual membership, Smith's former positions with the NRSC, and the use of the list.

In deciding that the committees were not affiliated, the General Counsel implicitly made the following conclusions. First, it is permissible for a former officer of a party committee to form a political committee that can make independent expenditures. Second, it is permissible for a former officer and a current member of a party committee to substantially draw upon contributors to the party committee to finance independent expenditures, so long as this is done without the consent of the party committee. Third, it is permissible for a member of a party committee controlled by its chairman to form a political committee that can make independent expenditures, so long as the member has no contacts with the party committee regarding the particular campaign.

Although Smith had held high positions within the NRSC, the FEC was not irrational in concluding that his founding of the RNIEC did not mean that the RNSC established or controlled that committee. Plaintiff has pointed to nothing in the statute or legislative history of the FECA which forbids an officer of a political committee from leaving that committee and forming an unaffiliated one. Smith's departure from the NRSC provided a sufficient reason for the FEC's decision not to equate Smith with the NRSC for purposes of affiliation.

The RNIEC's use of the list which Smith brought from the NRSC raises the issue of whether the NRSC established or financed the RNIEC. Such use resulted in a substantial number of common contributors to the committees, which is an indication that they were affiliated. *See* 11 C.F.R. § 110.3(a)(1)(iii)(D). The FEC investigated the circumstances surrounding the transfer or ownership of the list, and it concluded that there was a *legitimate dispute* between the NRSC and Smith as to the ownership, as the NRSC contested whether Smith had any right to use it on behalf of the RNIEC. The General Counsel concluded that any presumption of affiliation was militated against by this dispute, which indicated that the NRSC did not willingly transfer the list or consent to its use.

In this situation it is difficult for the Court to question the inferences made by the General Counsel based upon the record before him. The regulation provides indicia of affiliation, but these are not presumptions, and it is up to the FEC to determine their applicability in a particular case. Here, the General Counsel concluded that despite the common contributors, the NRSC did not finance the RNIEC through the use of the list since the evidence before him indicated that the NRSC actively opposed such use. Such a conclusion is not contrary to law, even though plaintiff would draw different inferences from the timing of the NRSC's objections.

The closest and most difficult issue in this case is whether Senator Heinz's membership in NRSC compels the conclusion that the committees are affiliated as a matter of law. Essentially, plaintiff's argument is that Senator Heinz's position as a United States Senator and as one of the sixteen senators who are members of the NRSC precludes his ability to form a committee that can make independent expenditures. Plaintiff asserts that the only rational conclusion is that the committees were established, financed, maintained, or controlled by the same person or group of people. In support of its argument, plaintiff cites to an advisory opinion issued by the FEC which states that committees will be treated as affiliated where the committees have a key member in common. Advisory Opinion 75–35, 1 Fed. Election Camp. Fin. Guide (CCH) at para. 5120 (September 18, 1975). The General Counsel appears to have concluded that Senator Lugar alone was the controlling and key member of the NRSC. That, together with Senator Heinz's lack of involvement in the NRSC's efforts on behalf of Evans, appears to be the basis for the General Counsel's conclusion that Senator Heinz's dual membership did not make the committees affiliated. The General Counsel stated that in other circumstances, Senator Heinz's dual membership might lead to a presumption of affiliation.

After giving this issue careful consideration, the Court cannot conclude that the decision of the FEC was contrary to law, arbitrary, capricious, or an abuse of discretion. The decision of the agency is entitled to considerable ·deference, and notwithstanding that the agency may not have always isolated the affiliation issue from the coordination issue, it is clear, as set forth above, that it addressed the three primary issues outlined above. The question is not how this Court would have decided, but rather, whether the agency's decision was contrary to law, or arbitrary, capricious or an abuse of discretion. As is noted above, this Court cannot reach that conclusion under these facts and accordingly the decision of the agency on the issue of affiliation must be upheld.

### III

An independent expenditure is one "which is made without cooperation or consultation with any candidate, or any authorized committee or agent of such candidate, and which is not made in concert with, or at the request or suggestion of, any candidate, or any authorized committee or agent of such candidate." 2 U.S.C. § 431(17); *see also* 2 U.S.C. § 441a(a)(7)(B)(i); 11 C.F.R. § 109.1(b)(4)(i).[3] Coordination will be presumed when an expenditure is

    (A) Based on information about the candidate's plans, projects, or needs provided to the expending person by the candidate, or by the candidate's agents, with a view toward having an expenditure made;

    (B) Made by or through any person who is, or has been, authorized to raise or expend funds, who is, or has been, an officer of an authorized committee, or who is, or has been, receiving any form of compensation or reimbursement from the candidate, the candidate's committee or agent.

11 C.F.R. § 109.1(b)(4)(i).

It is undisputed that if the RNIEC coordinated its expenditures with the NRSC, those expenditures would not be independent. However, in the absence of any direct evidence of an exchange of information between the RNIEC and the NRSC regarding the Evans campaign, the FEC determined that there was no probable cause to find that the committees coordinated expenditures. Congress did not speak directly to the coordination issues here, either in the FECA or its legislative history. Thus, the Court's task is to determine whether the FEC followed its regulations and applied a reasonable interpretation of the FECA.

    Plaintiff maintains that the FEC should have presumed that the RNIEC and the NRSC coordinated expenditures because they used common vendors, including an attorney who performed legal services, and a consultant who assisted in filling out reports to the FEC. Plaintiff argues that the existence of common vendors provided an "obvious opportunity for coordination of expenditure strategies." (Plaintiff's Memorandum at 32.) It asserts that the FEC departed from its past practice in failing to presume coordination, and that it erred in accepting the RNIEC's contention that the vendors performed merely "routine services".

Plaintiff also asserts that the FEC ignored the presumption of coordination that should arise under 11 C.F.R. § 109(b)(4)(i)(B) because of Smith's and Senator Heinz's links to the RNSC. It contends that the requirement of direct evidence of active coordination is inconsistent with the FEC's past practice and with the intent of the FECA. Plaintiff's interpretation of the coordination provisions would bar people with direct knowledge of a party committee's general campaign strategies from making expenditures independent of those of such a committee.

This Court has previously ruled that the FEC's requirement of evidence of direct coordination is sufficiently reasonable to be upheld. *Common Cause v. Federal Election Commission*, 655 F.Supp. 619, 624

---

**3.** This regulation provides that an expenditure is not independent if it is made through "[a]ny arrangement, coordination, or direction by the candidate or his or her agent prior to the publication, distribution, display, or broadcast of the communication."

(D.D.C.1986), *reversed on other grounds*, 842 F.2d 436 (D.C.Cir.1988). In that case, the FEC dismissed a claim of coordination even though a presumption of coordination did arise because of the use of common vendors. Here, plaintiff objects to the FEC failure to raise such a presumption. After reviewing the record, the Court cannot conclude that the FEC abused its discretion or acted irrationally in accepting the RNIEC's characterization of the services performed by the vendors as "routine". While the use of common vendors might have provided the opportunity for coordination, neither provided the type of services which the FEC usually required to invoke the presumption. Furthermore, the RNIEC stated to the FEC that neither the attorney nor the consultant performed services for the NRSC after Senator Jackson's death. (Plaintiff's Exhibit 7.) Finally, the affirmative evidence that there was no direct coordination provided a reasonable basis for the FEC to rebut any presumption that should have arisen because of the common vendors.

■] As to Smith and Senator Heinz, since neither of them was an officer of the NRSC at the time that it was an authorized committee of the Evans campaign, it is not even clear that any presumption should arise under 11 C.F.R. § 109.1(b)(4)(i).[4] In any event, the FEC's adoption of the "reason to believe" recommendation can be interpreted as the application of such a presumption, which subsequently was rebutted by the affirmative evidence that there were no contacts between the committees with respect to the Evans campaign. Thus, the FEC did not violate this regulation.

Additionally, plaintiff has not shown a deviation from prior practice which would justify a refusal to defer to the FEC's requirement of direct evidence. Plaintiff relies heavily upon an advisory opinion which concluded that a volunteer in President Ford's primary campaign could not form a committee to make independent expenditures in the general election. (Plain-

tiff's Memorandum at 36.) Here, in contrast, the FEC determined that neither Smith nor Senator Heinz was involved in activities at the NRSC specifically related to the Evans campaign. This determination provides a reasonable distinction of the alleged past practice.

In regard to the FEC's interpretation of the FECA, this case is somewhat different from *Common Cause v. Federal Election Commission*, 655 F.Supp. 619, where this Court ruled that the FEC's requirement of direct evidence of coordination was reasonable. Here, plaintiff does not argue for a "totality of the circumstance" approach. Instead, plaintiff contends that the possession of knowledge of inside information regarding the general strategies of a political committee amounts to coordination with that committee. Plaintiff asserts that expenditures by one with such knowledge are as effective as a directly coordinated expenditure, thus raising the possibility or the perception of corruption.

In *Buckley v. Valeo*, 424 U.S. 1, 47, 96 S.Ct. 612, 648, 46 L.Ed.2d 659 (1976), the Court stated that "[t]he absence of prearrangement and coordination of an expenditure with the candidate or his agent not only undermines the value of the expenditure to the candidate, but also alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate." There does not appear to be a question that the expenditures at issue here are valuable, or that plaintiff's broader interpretation of the coordination provisions would further the goal of ensuring that independent expenditures are truly independent. However, defendant's position that without direct coordination, there is little possibility that expenditures will be made as a *quid pro quo* for political favors does appear to be a rational one, and it does address concerns about the possibility or appearance of corruption. The requirement of direct coordination in this context does not "unduly compromise" the FECA's purposes.

---

**4.** Plaintiff did not include this regulation in the section of its administrative complaint on appli-

cable statutes and regulations.

*See Orloski,* 795 F.2d at 164 (regarding review of interpretation).

The Court cannot conclude that the agency was in error in reaching the conclusion it did with respect to the question of coordination.

## IV

 Plaintiff contends that the FEC erred in failing to consider its allegation that RNIEC was a political committee of the RNC.[5] The FEC argues that no separate discussion of this issue was necessary because this allegation was just another way of saying that the RNIEC and the NRSC were affiliated.

Although there are some overlapping allegations, the administrative complaint states that the RNIEC is a political committee of the national party by virtue of its ties to the national party, and not just to the NRSC. (Plaintiff's Exhibit 4, at para. 15(a).) The FEC should have addressed this claim, but it failed to do so. *See* Defendant Federal Election Commission's Statement of Genuine Issues, No. 16. The question of whether the RNIEC is a party committee under 11 C.F.R. § 100.5(e)(4), is separate one from whether the RNIEC is affiliated with the NRSC. Under these circumstances, the Court concludes that so much of the case as addresses this limited issue must be remanded to the FEC for its consideration.

An appropriate order has been filed.

## ORDER

This case comes before the Court on cross-motions for summary judgment. After giving careful consideration to the motions, the Court concludes that the motions should be granted in part and denied in part, and that a limited issue should be remanded to the Federal Election Commission for further consideration, all for the reasons set forth in the accompanying Memorandum.

It is hereby

ORDERED that the plaintiff's motion for summary judgment is granted in part and denied in part, and it is further

ORDERED that the defendant's motion is granted in part and denied in part, and it is further

ORDERED that plaintiff's motion is granted with respect to the claim asserted in Count I of the Complaint; the question as to whether the Republican National Independent Expenditure Committee was a political committee of the Republican National Committee is remanded to the Federal Election Commission for consideration and resolution; the remainder of the plaintiff's motion is denied with prejudice, and it is further

ORDERED that the defendant's motion is granted with respect to the claims asserted in Counts II and III of the Complaint; those claims are dismissed with prejudice; the remainder of the motion is denied with prejudice.

---

**5.** This claim is found at paragraph 15(a) of    plaintiff's administrative complaint.