**COMMON CAUSE, Appellant**

v.

**FEDERAL ELECTION COMMISSION.**

No. 89–5231.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 10, 1990.

Decided June 19, 1990.

W. Hardy Callcott, with whom Roger M. Witten and Mindy H. Recht, Washington, D.C., were on the brief, for appellant.

Janice P. Lacy, Atty., Federal Election Com'n, with whom Lawrence M. Noble, Gen. Counsel, and Richard B. Bader, Associate Gen. Counsel, FEC, were on the brief, for appellee.

Before WALD, Chief Judge; MIKVA, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The Federal Election Commission determined that the Republican National Independent Expenditure Committee (RNIEC) and the National Republican Senatorial Committee (NRSC) were not affiliated within the meaning of 2 U.S.C. § 441a(a)(5), and therefore that there was not probable cause to believe that they had exceeded the expenditure limits of the Federal Election Campaign Act, 2 U.S.C. § 441a, in their support of Dan Evans's 1983 campaign for the United States Senate. The district court upheld the agency's conclusion. *Common Cause v. FEC*, 715 F.Supp. 398 (1989). We reverse because the FEC did not adequately analyze the issue of affiliation in the terms prescribed by the governing statute and regulation.

I. BACKGROUND

Common Cause filed a complaint with the FEC alleging that the RNIEC and the NRSC were affiliated within the meaning of § 441a(a)(5) of the FECA, and that, in furtherance of Evans's Senate race, they had coordinated their expenditures within

the meaning of § 441a(a)(7)(B)(i). If the committees were affiliated, or if they coordinated their expenditures on behalf of Evans, then they exceeded the spending limit of § 441a.

Common Cause's affiliation claim was based upon three facts. First, Mr. Rodney Smith served as Financial Director and Treasurer of the NRSC until two months before he co-founded and became Treasurer of the RNIEC. Second, Senator John Heinz continued to be a member of the NRSC for a short time after he co-founded and joined the Advisory Panel of the RNIEC. Third, as a result of the RNIEC's use of the NRSC's mailing list, there was a substantial overlap in the roster of contributors to the two committees.

Following an investigation, the General Counsel of the FEC concluded that the RNIEC and the NRSC were not affiliated and did not coordinate their expenditures; he therefore recommended that the FEC find no probable cause to believe that there had been a violation of the Act. Specifically, the General Counsel concluded that Mr. Smith had not taken advantage of his links to the two organizations in order to further Evans's campaign; that "despite th[e] overlap in memberships, Senator Heinz did not communicate in any manner with the NRSC concerning the Evans senate race" and "was not provided with information concerning NRSC's plans and activities"; and that although the RNIEC's use of the NRSC's contributor list was "instrumental" in its establishment, "there is a genuine dispute as to ownership of the list thus militating against the list as a presumption of the affiliation of the two committees." The General Counsel also found generally that "the NRSC attempted to distance itself from the RNIEC and its independent activities."

The Commission, without opinion, adopted the General Counsel's recommendation, thus concluding that there is no probable cause to believe that a violation occurred. Common Cause sought review in the district court, which—on the assumption that the FEC adopted the reasoning of the General Counsel's brief, *see FEC v.*

*Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 38 n. 19, 102 S.Ct. 38, 45 n. 19, 70 L.Ed.2d 23 (1981)—upheld the agency's putative findings that the RNIEC and the NRSC were not affiliated and had not coordinated their expenditures in re Evans. 715 F.Supp. at 401–05. Common Cause now appeals only the "not affiliated" aspect of that decision.

## II. ANALYSIS

■ Judicial review of the FEC's decision is deferential: a court is to reverse the agency only if its decision is "contrary to law." 2 U.S.C. § 437g(a)(8)(C); *see Democratic Senatorial Campaign Comm.,* 454 U.S. at 37, 102 S.Ct. at 44. Accordingly, we consider whether the agency's decision was based upon an impermissible interpretation of the FECA or was arbitrary and capricious. *Orloski v. FEC,* 795 F.2d 156, 161 (D.C.Cir.1986). Because, in so doing, we are "dealing with a determination or judgment which an administrative agency alone is authorized to make, [we] must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). We will, however, uphold an agency decision "of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974).

■ In this instance, we are unable to uphold the Commission's decision (equating it with the General Counsel's brief) because it gives no indication that the agency considered whether the NRSC and the RNIEC were affiliated as that term is defined in the applicable statutory and regulatory provisions. Indeed, the brief lacks any discussion of the affiliation issue that is independent of the analysis of the separate coordination issue.

Section 441a(a)(5) of the FECA defines affiliated committees as those that are "established or financed or maintained or controlled" by the same person or group. At the time in question, the Commission had implemented this definition by promulgat-

ing a regulation listing several "indicia" of affiliation, including "[t]he authority, power, or ability to hire, appoint, discipline, discharge, demote, or remove or otherwise influence the decision of the officers or members of an entity;" and "[s]imilar patterns of contributions." 11 C.F.R. § 100.5(g)(2)(ii)(C), (D) (1989) (since revised).

The brief merely mentions the statutory criteria, which were also incorporated into the Commission's regulations, § 100.5(g)(2); it makes no attempt to tie those criteria to the facts of this case. Even more telling, the brief makes no reference to the relevant indicia of affiliation listed in the implementing regulations, *cf., e.g., In re Mondale for President Comm., Inc.,* MUR 1667, First General Counsel's Report (May 7, 1984), and thus fails to address the specific grounds urged by Common Cause for holding that the committees were affiliated. As a result, there is simply no indication that the agency ever considered whether Mr. Smith or Senator Heinz had the "authority, power, or ability to hire, appoint, discipline, discharge, demote, or remove or otherwise influence the decision of the officers or members of" the two committees.

Thus, with respect to Mr. Smith, the General Counsel concluded only that "it does not appear that he used [his links to the two committees] to either acquire information from the NRSC or inform that organization of the RNIEC's plans concerning the Evans senate race." That conclusion addresses only whether Smith was a means by which the two committees were able to coordinate their efforts on behalf of Evans. It does not bear upon whether Smith had the ability to influence the decisions (etc.) of both committees.

Likewise, with respect to Senator Heinz, the General Counsel found only that he did not participate in any NRSC meetings during the period that Evans was running for the Senate; that he received no information from the NRSC about its activities on behalf of Evans; and that once Senator Lugar, who ran the NRSC on a day-to-day basis during this period, became aware of the RNIEC's fund-raising activities, he asked Senator Heinz to resign from the NRSC. The General Counsel did not make any findings indicating, nor did he expressly conclude, however, that Senator Heinz lacked the ability to influence the decisions of the NRSC. That Senator Lugar ran the RNIEC's day-to-day activities is not inconsistent with Senator Heinz's having the influence that Common Cause alleges.

The third issue raised by Common Cause, concerning the RNIEC's use of the NRSC's contributor list, is somewhat less troubling. Although the General Counsel did not, in his discussion of this issue, specifically refer to the "[s]imilar patterns of contributions" indicium, his discussion suggests that the RNIEC's use of the list tends to indicate that the committees were affiliated. In any event, he explains that that implication was rebutted by the committees' vigorous dispute over ownership of the list.

### III. CONCLUSION

The district court could uphold the FEC's decision only by inferring that the General Counsel had in fact adopted propositions that the court thought were "implicit" in his analysis. 715 F.Supp. at 401–03. In doing so, however, the district court drew inferences for which there is inadequate support in the reasoning of the General Counsel's brief. By supplying reasons that the agency never adopted as its own, the court strayed beyond the boundary between the judicial and the administrative roles, as set out for us in *Chenery.*

Based upon the General Counsel's brief to the Commission, it is impossible to discern whether the FEC applied the applicable statute and regulation to the claim that the NRSC and the RNIEC were affiliated. The judgment of the district court is therefore reversed, and we remand the case with instructions to return the matter to the FEC for reconsideration consistent with this opinion.

*So ordered.*