DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE, Plaintiff,

v.

FEDERAL ELECTION COMMISSION, Defendant.

Civ. A. No. 90–1504.

United States District Court,
District of Columbia.

Aug. 27, 1990.

Robert F. Bauer, Barry J. Reingold, Holly B. Schadler, Perkins, Core, Washington, D.C., for plaintiff.

Lawrence M. Noble, Richard B. Bader, David M. Fitzgerald, Washington, D.C., for defendant.

Thomas Hale Boggs, Jr., Richard E. Messick, Patton, Boggs & Blow, Washington, D.C., for amicus curiae Auto Dealers.

## MEMORANDUM OF OPINION AND ORDER

REVERCOMB, District Judge.

This is an action under the Federal Election Campaign Act of 1971, as amended ("Act"), 2 U.S.C. §§ 431 *et seq.* Plaintiff, the Democratic Senatorial Campaign Committee ("DSCC"), seeks judicial review of a decision by the Federal Election Commission ("Commission") dismissing a portion of a complaint brought by DSCC against the Auto Dealers and Drivers for Free Trade Political Action Committee ("Auto Dealers PAC"), the Friends of Connie Mack Committee ("Mack Committee") and Connie Mack. In the relevant portion of its complaint to the Commission, DSCC charged that the Auto Dealers PAC violated the Act's campaign contribution limits by conducting an advertising campaign urging voters to support Mr. Mack in the 1988 Florida election for the U.S. Senate. The DSCC also complained that the Mack Committee and Mr. Mack violated the Act by accepting the PAC's "contribution." At bar are plaintiff DSCC and the Federal Election Commission's cross-motions for summary judgment.[1]

## I. *Factual Summary*

The facts of this case are undisputed. During the final weeks of the 1988 elections, the Auto Dealers PAC spent more than $300,000 producing and airing television and radio advertisements on behalf of the election of then-Representative Connie Mack. On November 3, 1988, the DSCC filed a complaint with the Commission alleging violations of the Act by the Auto Dealers PAC, the Mack Committee and Robert I. Watkins, as treasurer, and then Representative Connie Mack. In that complaint, DSCC alleged that expenditures made by the Auto Dealer PAC were not "independent" as there were substantial relationships between the PAC and the Mack Committee. Specifically, the Auto Dealers had retained two key political consultants, Multi-Media Services Corporation and Karl Rove and Associates,[2] who were also retained by the Mack campaign. Both consultants provided services to the Mack Committee *in Florida* and to the Auto Dealers PAC *outside Florida.* In its complaint, the DSCC asked the FEC to order a further investigation of the matter.

In response, the Auto Dealers PAC acknowledged that it had engaged in advertising in support of Mr. Mack, but asserted that those advertisements had not been coordinated with the Mack campaign, and therefore were independent expenditures. The PAC denied using either media firm in connection with the Florida Senate race and identified the Lambert/Dale firm as its media buyer consultant for the Florida Senate race. The PAC's director, Francis H. Glacken, explained in an affidavit that he had screened all vendors retained by the PAC and warned the vendors to be sure that the PAC's expenditures were not made in coordination or consultation with any candidate. With respect to DSCC's specific charges, the Director stated that when he

---

1. The Auto Dealers PAC also participated in this action as *amicus curiae.*

2. *Multi-Media bought television time for the advertisements of the Mack campaign and for* the PAC in four other states, Wyoming, Nevada, Mississippi and California. Karl Rove designed direct mail appeals for support and money.

met with the presidents of Multi–Media and Rove in the Fall of 1988, he asked each, which, if any campaigns had retained them and, after each disclosed his Mack affiliation, Mr. Glacken told each consultant "not to say anything at all to [him] or anyone associated with the PAC about the Florida Senate race." Finally, the Director affianced that there were no discussions between either firm and the PAC about the Florida race. The PAC also submitted affidavits from the presidents of Multi–Media (Anthony M. Fabrizio, Jr.) and Rove Company (Karl C. Rove), consistent with the PAC Director's affidavit. The Mack Committee offered the affidavit of its campaign manager, Mitch Bainwol, who stated that no one connected with the Mack campaign cooperated or consulted in any way with the PAC, or had any contact with it concerning its independent expenditure campaign and that there was no sharing of campaign information. The PAC's response to the complaint further noted the group's familiarity with and reliance upon the Commission's decision in Advisory Opinion 1979–80. This Opinion suggested that a PAC could properly retain a polling firm for the PAC's campaigns in States A and B even though the firm had also been retained by a candidate in State C, a state in which the PAC also was campaigning. *See Federal Election Campaign Financing Guide,* ¶ 10.529, answer 3.

In spite of the respondents' submissions, FEC's General Counsel recommended that the Commission authorize an investigation of the matter because of "unanswered questions regarding possible connections between the Mack Committee and Auto Dealers and the two common vendors."[3] Counsel posited that the affidavits did not foreclose every possibility of indirect communication between the Auto Dealers PAC and the Mack Committee. He also explained that he had been unable to confirm the identity of the vendor that the PAC

claimed to have used in Florida, and therefore had been unable to determine whether there was any connection between that vendor and Multi–Media or Rove. Finally, General Counsel noted that his office had not had an opportunity to compare the advertising by the PAC with the Committee's advertising to determine whether there were any similarities that might support an inference of cooperation.

On October 24, 1989, the Commission considered the complaint and materials submitted in response. By a vote of 3–2 (and one abstention), the Commission found that there was no "reason to believe" that a violation of the Act may have occurred. *See* 2 U.S.C. § 437g(a)(2). Accordingly, the complaint was dismissed for an insufficient number of votes. *See id.* The Commission's decision rested on the conclusion that, despite the use of common consultants, the record did not suggest that there had been coordination between the Mack Committee and the PAC.

> In our opinion, respondents' answers to the complaint adequately refuted the complainant's allegations as to any presumed coordination between the Mack campaign and Auto Dealers in the making other 'independent expenditures.' The evidence before the Commission, *or any reasonable inference drawn from the evidence,* did not support even a preliminary finding of 'reason to believe' the respondents had violated the Federal Election Campaign Act under these circumstances ... No evidence of any *act or consequence* of coordination between the expenditure maker and the beneficiary campaign was ever offered or fairly imputed ... Not one shred of evidence of circumstantial clue contradicted their denials of coordination or otherwise indicated that any impermissible coordination occurred. *Statement of Reasons,* pp. 2–4 (emphasis added).

---

3. Under the Commission's procedures, after the respondents have been afforded an opportunity to reply to a complaint, the Commission's General Counsel makes a recommendation to the Commission as to whether it should find reason to believe that the respondents have violated the

Act. 11 C.F.R. § 111.7. If the Commission finds "reason to believe," it conducts an investigation in which, *inter alia,* it may employ compulsory process to obtain additional evidence. *See* 2 U.S.C. § 437g(a)(2); 11 C.F.R. § 111.10.

Plaintiff DSCC now asks this Court to find that the dismissal of the DSCC's administrative complaint was contrary to law, and to order the Commission to initiate expedited enforcement proceedings concerning the matters raised in the complaint.

## II. *Analysis*

■ Judicial review of the FEC's decision not to investigate DSCC's complaint is deferential: a court is to reverse the agency only if its decision is "contrary to law." 2 U.S.C. § 437g(a)(8)(C); *Common Cause v. Federal Election Commission,* 906 F.2d 705, 706 (D.C.Cir.1990). The FEC's decision is "contrary to law" if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act, or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion. *Orloski v. Federal Election Com'n,* 795 F.2d 156 (D.C.Cir. 1986). To uphold the Commission's decision under this standard, the Court need not agree with the decision. Rather, it need only determine that the decision "was 'sufficiently reasonable' to be accepted by a reviewing court." *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981).

Section 315 of the Federal Election Campaign Act, 2 U.S.C. §§ 431–455, imposes dollar limits on campaign contributions to candidates for federal office. Multicandidate political committees such as the Auto Dealers PAC can contribute no more that $5,000 to any candidate or his authorized political committees. 2 U.S.C. §§ 441a(a)(2)(A), 441a(f). When expenditures are made in "cooperation, consultation, or concert with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents," they will be considered contributions to a candidate and subject to the limitations of section 315(a). 2 U.S.C. § 441a(a)(7)(B)(i).

In contrast, the Act imposes no dollar limits on any *independent* expenditure by the Auto Dealers PAC in support of a candidate. An "independent expenditure" is

an expenditure by a person expressly advocating the election or defeat of a clearly identified candidate which is made without cooperation or consultation with any candidate, or any authorized committee or agent of the candidate, and which is not made in concert with, or at the request or suggestion of, any candidate, or any authorized committee or agent of such candidate. 2 U.S.C. § 431(17).

One reason that "contributions" can be controlled but expenditures cannot is that "the absence of prearrangement and coordination of an expenditure with the candidate or his agent not only undermines the value of the expenditure to the candidate, but also alleviates the danger that expenditures will be give as a *quid pro quo* for improper commitments from the candidate." *Buckley v. Valeo,* 424 U.S. 1, 47, 96 S.Ct. 612, 648, 46 L.Ed.2d 659 (1976).

■ Plaintiff DSCC contends that the "totality of the circumstances" compels at least a minimal investigation to determine whether the PAC's expenditures were "independent." These circumstances include: that the Auto PAC and the Mack Committee used common consultants, that the affidavits submitted by the PAC and Mack Committee raised, rather than answered, substantial questions, and that the General Counsel had recommended a further investigation. The Court is not persuaded by plaintiff's arguments and concludes that defendant did not act contrary to law. Both parties concede that the use of "common consultants" does not by itself trigger an investigation; and there was no reason to presume "coordination" as the consultants were retained by the PAC to work on elections only *outside* the state of Florida. Neither the Commission's refusal to follow General Counsel's recommendation nor the Commission's split vote make its decision unreasonable. *See Democratic Cong. Campaign v. FED Election Com'n,* 831 F.2d 1131, 1135, n. 5 (D.C.Cir.1987); *Stark v. FEC,* 683 F.Supp. 836, 840 (D.C.D.C. 1988).

In refusing to order an investigation, the Commission applied a minimum evidentiary

threshold that required at least "some legally significant facts" to distinguish the circumstances from every other independent expenditure situation. *Supporting Memorandum for the Statement of Reasons* (Commissioner Josefiak), p. 4. As Commissioner Josefiak explained,

> [At this stage of the proceedings], complaints certainly do not have to *prove* violations occurred, rendering investigation unnecessary, but the alleged facts must present something that is, in the broad sense, "incriminating" and not satisfactorily answered by the respondents. *Id.* at pp. 4–5.

While the Court recognizes that a factual record may be sparse at the complaint-stage, the Commission's use of some kind of evidentiary threshold is infinitely reasonable; otherwise *every* "independent expenditure" complaint would demand investigation.

Here, the only record fact offered in support of DSCC's allegations was the use of "common consultants." There was no evidence of meetings, discussions or communications (direct or indirect) between the Florida PAC and the consultants; nor was there evidence that the nonFlorida PAC information and strategies could have helped the Mack campaign. The affidavits submitted to the Commission suggest that the Florida Auto PAC built a "Chinese Wall" between itself and the two Mack consultants.

Contrary to DSCC's assertions,[4] it is entirely reasonable to read the affidavits as precluding, rather than raising, an inference of coordination. The Mack campaign manager denied that anyone associated with the campaign had any contact whatsoever with Auto Dealers regarding their campaign. Auto Dealers denied having any contact before the election with "anyone associated in any way with the Mack" campaign, including discussions of the Florida senate race with Multi–Media or Karl Rove and explained how it took affirmative steps to prevent the PAC members and the consultants from passing information, even indirectly to the Mack

Committee. Multi–Media and Karl Rove were not involved with or privy to information about Auto Dealers' expenditure on behalf of Mack in Florida. There is no inherent reason to disbelieve these statements which were made under oath and under penalty of perjury. Nor do the affidavits necessarily appear to be "narrowly worded." "Coordination" between the Mack campaign and Auto Dealers is denied broadly and with particularity as to the "common consultant" scenario posed by the complaint. There is nothing about the affidavits that appears to be strained, evasive or facially incomplete.

The Commission also considered Lambert/Dale's potential role as a conduit between the Florida PAC and the consultants. Both DSCC and General Counsel argued that the PAC's use of Lambert/Dale for buying television time for its Florida expenditures and the affidavits' failure to address this relationship necessitated an investigation of Lambert/Dale. The Court does not agree. There was no evidence that Lambert/Dale had any association or dealings with the Mack campaign; and Lambert/Dale was even more structurally isolated from the two Mack consultants than the Florida PAC itself.

Given the "totality of circumstances" of this particular case, the Commission's decision and Statement of Reasons was not contrary to law. Accordingly, plaintiff's motion for summary judgment is DENIED and defendant FEC's motion for summary judgment is GRANTED.

---

4. General Counsel also questioned the affidavits in his recommendation to investigate.